IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN THE MATTER OF | : | MISCELLANEOUS |
| | : | |
| JOSHUA LOUIS THOMAS | : | No. 21-73 |
| | : | |

Diamond, Smith, JJ.                                                                                                May 22, 2023

## REPORT AND RECOMMENDATION

Judge Pappert has sanctioned Respondent Joshua Louis Thomas for dishonesty and unprofessional conduct. (Taggart v. Deutsche Bank Nat'l Trust Co., Dkt. 20-cv-5503, Doc. Nos. 63, 64.) On November 22, 2021, Chief Judge Sánchez ordered this Panel, "to determine whether or not discipline is warranted in connection with [Thomas's] conduct [in the Deutsche Bank matter]. . . ." (Dkt. 21-mc-73, Doc. No. 5.) Disciplinary Counsel Alfred Putnam has shown with clear and convincing evidence that Thomas' misconduct before Judge Pappert—which was quite similar to his misconduct before some eight other Bankruptcy, Third Circuit, and District Court Judges (including Judges McHugh, Jones, and Wolson)—warrants his disbarment. Accordingly, we recommend Thomas's disbarment from the bar of this Court.

**I.     BACKGROUND**

Thomas, who is 38 years old, was admitted to the Pennsylvania Bar in 2011 and our bar in 2012. (Hrg. Tr. at 34:19–25, June 16, 2022, Doc. No. 12.). In 2021, Pennsylvania suspended Thomas by consent for two years because of misconduct before Judge Wolson. See Jacovetti Law, P.C. v. Shelton, Civ. No. 20-163, 2020 WL 1491320 (E.D. Pa. Mar. 27, 2020). Prior to his Pennsylvania suspension, Thomas was a solo practitioner. (Hrg. Tr. at 35:1–13, June 16, 2022, Doc. No. 12.)

## II.     CONDUCT BEFORE JUDGE PAPPERT

Thomas represented serial litigant Kenneth Taggart in a suit against Deutsche Bank National Trust Company and other financial institutions. (Taggart v. Deutsche Bank Nat'l Trust Co., Dkt. 20-cv-5503, Doc. Nos. 63, 64.) In summarizing Taggart's 24 other lawsuits (Thomas having served as counsel in 70% of them), Judge Pappert wrote that: (1) they were almost all "naked attempts" to avoid valid obligations (usually mortgages) with no lawful basis; (2) Taggart "has not received a favorable judgment in any of his actions;" and (3) Taggart "has been warned that his cases are an abuse of the judicial process." Taggart v. Deutsche Bank Nat'l Trust Co., Civ. No. 20-5503, 2021 WL 2255875, at *1 n.1 (E.D. Pa. June 3, 2021) (internal quotations omitted); (Hrg. Tr. at 24:21–25:10, June 16, 2022, Doc. No. 12.)

Like the judges in the two dozen suits Taggert has filed over some ten years, Judge Pappert found Taggart's claims were baseless attempts to evade valid mortgages. Id. at *2. Imposing sanctions, Judge Pappert found that Thomas "enable[d Taggart's] worst instincts and tendencies": (1) acting in bad faith by missing almost every court deadline; (2) submitting filings with glaring deficiencies; and (3) "[lying] repeatedly[] to the Court." Id. at *11–19. Thomas does not dispute these findings, which the record amply supports.

During a Deutsche Bank hearing, opposing counsel noted that Pennsylvania had administratively suspended Thomas's law license for failure to meet CLE requirements. Id. at *12. After Thomas explained that he had already completed the required CLE and submitted the necessary paperwork, Judge Pappert allowed him to proceed. Id. The Judge subsequently learned that Thomas had completed the CLE requirements five days *after* the hearing, and was not reinstated until eleven days after the hearing. Id.

At the resulting show cause proceeding, Thomas told Judge Pappert that at the time of the

earlier hearing, he had completed—but had not submitted—the CLE paperwork. Id. at *13; (Show Cause Hrg. Tr. 60:6–65:12, Dkt. No. 20-cv-5503, Doc. No. 61). Thomas acknowledged that he lied to the Judge. (Show Cause Hrg. Tr. 55:1–19, Dkt. No. 20-cv-5503, Doc. No. 61 (The Court: The question is why did you lie to me? Mr. Thomas: And the answer, I can't give a good answer frankly.))

Judge Pappert found that Thomas failed to comply with professional standards by missing innumerable deadlines. Deutsche Bank, 2021 WL 2255875, at *13–14:

> Given Thomas's history and pattern of missing deadlines, his explanation that he mistakenly set 21-day deadlines to respond to the Motions in this case comes up short. . . . Thomas's failure to grasp the importance of complying with Court deadlines after his experience with Judge Wolson and other courts is unacceptable, especially for an attorney who frequently practices before our Court. And his "calendaring error" reveals an unfamiliarity with one of this Court's most basic rules. LOCAL RULE OF CIV. P. 7.1(c). Ignorance of this rule is inexcusable and knowingly and repeatedly disregarding it is worse. Thomas acted in bad faith by missing nearly every deadline in this case.

Deutsche Bank, 2021 WL 2255875, at *14.

Judge Pappert described the Amended Complaint Thomas had prepared as "a convoluted, incoherent, jumbled mess." Id. at *2. Comprising some 400 paragraphs, the pleading contained "countless typographical and spelling errors," and lacked "any semblance of logical organization or clarity." Id. at *2, *14–15. Indeed, Thomas had copied and pasted sections of his state court pleadings. Id. at *15. The spelling and grammatical mistakes, and the pleading's "general lack of cogency" went "beyond excusable neglect or mistake." Id. at *14.

Finally, Judge Pappert found that Thomas violated Rule 11(b)(1) and (2) by filing claims and motions he knew to be deficient. Fed. R. Civ. P. 11(b)(1) and (2); Deutsche Bank, 2021 WL 2255875, at *15–18. Thomas had: (1) sought a preliminary injunction "for the improper purposes of collaterally attacking a state court judgment and increasing the cost of litigation"; (2) re-filed a

claim he knew had no factual support "to harass, cause unnecessary delay and needlessly increase the cost of litigation"; (3) pled quiet title and slander of title claims he knew lacked factual support; and (4) brought facially time-barred claims without offering any suggestion of tolling. Id. at *16–18.

Based on this profusion of unprofessional conduct, Judge Pappert fined Thomas $2,500 and notified the Chief Judge for possible referral to this Committee. Local Rule of Civ. P. 83.6.5.

Proceeding *pro se*, Taggart has appealed Judge Pappert's decision to dismiss his suit. Taggart v. Deutsche Bank National Trust Co., No. 21-2278 (3d Cir.) (decision pending). Neither Thomas nor Taggart has appealed the Sanctions Order.

### III.   DISCIPLINARY PROCEEDINGS

On August 18, 2021, Chief Judge Sánchez appointed Alfred W. Putnam, Jr. of Faegre Drinker Biddle & Reath "to investigate whether there is probable cause to believe that Respondent violated any provision of the Pennsylvania Rules of Professional Conduct (adopted by this Court), in connection with his activities in [Deutsche Bank]." (Doc. No. 1) (citing Local R. Civ. P. 83.6.V(C) ("This Court may at any stage appoint counsel to investigate and/or prosecute the proceeding under this Rule."), and Local R. Civ. P. Ann. 83.6 n.4(a) (2009 ed.) ("[T]he federal court retains the right to select its own attorney to investigate and/or prosecute disciplinary complaints.")).

On October 12, 2021, Mr. Putnam filed a Petition for Rule to Show Cause, urging there was probable cause that Thomas had, in appearing before Judge Pappert: (1) violated Rules 3.1 and 8.4(a) by bringing claims and making arguments "he knew had no legal basis"; (2) violated Rules 3.2 and 8.4(a) by engaging "in practices that were intended to delay the litigation and increase its expense"; (3) violated Rules 3.3(a)(1) and 8.4(a) by disregarding "his duty of candor

to the Court by making false statements of material fact and law and failing to correct them"; and (4) violated Rules 1.1, 1.3, and 8.4(a) and "failed in his duties to his client" by "failing to manifest the competence and diligence required of counsel." (Pet. For Rule to Show Cause ¶ 3, Dkt. 21-mc-73, Doc. No. 2); Pa. R.C.P. 1.1, 1.3, 3.1, 3.2, 3.3(a)(1), 8.4(a).

Having reviewed Mr. Putnam's Petition, on November 2, 2021, Chief Judge Sánchez issued a Rule to Show Cause and directed Thomas to explain "why the Court should not discipline him under Local Rule 83.6 and the incorporated Pennsylvania Rules of Professional Conduct for the conduct described in the Petition." (Doc. No. 3.)

On November 22, 2021, the Chief Judge referred the matter to the Attorney Discipline Committee. (Doc. No. 5.) Matthew Weisberg (Thomas' counsel) responded that same day that "Mr. Thomas concurs that there exists probable cause for discipline," and "requests reciprocal discipline (as already publicly imposed by the Supreme Court of Pennsylvania)." (Doc. No. 4.) Because Pennsylvania had imposed a two-year suspension in Judge Wolson's matter—and there was thus no "reciprocal" discipline to impose in Judge Pappert's matter—the Panel understood counsel to say that Thomas did not oppose two years' suspension from our bar for his misconduct before Judge Pappert.

Thomas nonetheless sought to evade any disciplinary hearing. After several unsuccessful attempts, the hearing was finally set for June 16, 2022. Weisberg then asked for permission to withdraw, noting that Thomas did not oppose the request. On June 15, Thomas himself emailed us, stating that if the Panel were to address something "more substantive" than Weisberg's withdrawal request, Thomas "would request some additional time to prepare." The Panel denied the continuance request, noting that Thomas had known since the previous November (when he acknowledged that he should be disciplined) that we would consider imposing sanctions for the

misconduct before Judge Pappert as set out in Mr. Putnam's Petition ("the hearing [would] address the Petition for Rule to Show Cause"). (Doc. No. 9.)

At the hearing's outset, Thomas, knowing that the Panel would address whether he should be disciplined, stated "I don't need a continuance at this point," agreed to his counsel's withdrawal, admitted his misconduct before Judge Pappert, and agreed discipline should be imposed. (Hrg. Tr. at 2:1–25, 3:14–5:14, June 16, 2022, Doc. No. 12.) As the hearing progressed, Thomas contradicted himself and (as he had before Judge Pappert), made false statements.

When we told Thomas that his misconduct before Judge Pappert might warrant his disbarment, he requested a continuance, although his reason for the request was less than clear. (Id. at 7:17–8:14, 10:1–20.) He said that even though he had reviewed Mr. Putnam's Petition and the other docket entries, Thomas believed that all we would consider on June 16 was "reciprocal" discipline of two years' suspension. (Id. at 8:15–9:9.) Yet, this assertion is inconsistent with what Thomas told us the day before: that he believed all we would address on June 16 was Weisberg's withdrawal request. Moreover, our Orders related to Mr. Putnam's Petition included no mention of "reciprocal" discipline.

We determined Thomas had been afforded more than enough time to prepare by June 16. (Id. at 9:16–22.) It was apparent that, as he had before Judge Pappert, Thomas had chosen simply to disregard yet another deadline. We thus discredited his various reasons for seeking a continuance. Thomas did not suggest he needed additional time to submit authority showing that his claims and motions in Deutsche Bank were even colorable. Nor did he tell us that he needed a continuance to gather any new evidence related to the charges brought by Mr. Putnam. Rather, he again conceded that there were sufficient grounds to impose discipline. He told us the only reason he needed a continuance was to present: "affidavits . . . from clients who would be more

than willing to state that they were satisfied with the work I did." (Id. at 10:1–20.) Once again, Thomas failed to explain why he had not collected this evidence over the previous eight months. Rather than simply deny the continuance request, however, we allowed Thomas to proffer substance of what each client would say about him and credited the proffers, which went only to mitigation. Thomas thus made offers of proof respecting how some two dozen clients (including Taggart) would vouch for him and his abilities. (Id. at 10:15–16:14) ("Anthony Trufolo . . . would say [I'm] a terrific lawyer and [a] terrific person.") We credited those offers. (Id. at 12:6–10.)

Thomas also told us that he had taken steps to ensure that his filings would be timely and more coherent. (Id. at 16:24–17:7.) For instance, Thomas testified that he intended to hire an assistant to help him meet deadlines. (Id. at 17:13–15.) Yet, he acknowledged that the assistant he intended to hire was his paralegal Malinda Combs, who had worked for him "for years"—evidently doing nothing to help Thomas meet deadlines. (Id. at 17:16–18:15.) Thomas also made several vague assurances: he was "utiliz[ing] a couple different types of software" to stay organized. (Id. at 18:20–25.) He was trying to "seek[] assistance where possible," and speak with other lawyers about his filings so that "everything submitted is proper." (Id. at 19:20–25.)

Finally, Thomas told us that he believed that his misconduct was the result of a "personal issue" for which he was seeking counseling. (Id. at 17:8–12, 38:21–22.)

**IV. LEGAL STANDARDS**

The Court has authority "to control admission to its bar and to discipline attorneys who appear before it." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991); In re Surrick, 338 F.3d 224, 229 (3d Cir. 2003). This Court may discipline attorneys appearing before us who violate the Pennsylvania Rules of Professional Conduct, which we have adopted:

> For misconduct defined in these Rules, and for good cause shown, and after notice and opportunity to be heard, any attorney admitted to practice before this court may

be disbarred, suspended from practice before this court, reprimanded or subjected to such other disciplinary action as the circumstances may warrant.

See Local R. Civ. P. 83.6.IV. Under Pennsylvania law, "[t]he power of a court to disbar an attorney should be exercised with great caution, but there should be no hesitation in exercising it when it clearly appears that it is demanded for the protection of the public." Office of Disciplinary Counsel v. Knepp, 441 A.2d 1197, 1201 (Pa. 1982) (quoting Matter of Leopold, 366 A.2d 227, 231 (Pa. 1976)).

## V. DISCUSSION

Thomas has acknowledged that there is good cause for discipline and asks us to impose a two-year suspension. (Hrg. Tr. at 3:8–11, 4:25–5:1, 5:15–16.) We do not believe that a two-year suspension is adequate to protect the public, the bar, or the Court from the harm Thomas will undoubtedly continue to cause if he is permitted to resume practice before us. Accordingly, we recommend his disbarment.

*Collateral Estoppel*

As we have discussed, at the outset, Thomas conceded that Judge Pappert's findings and conclusions were correct. Later in the hearing, however, Thomas impugned Judge Pappert's legal conclusions, telling us that Taggart's claims (quite similar to those Thomas had raised unsuccessfully in many other matters) were neither frivolous nor meritless. (Hrg. Tr. 23:10–16, 29:8–33:19.) Although Thomas has not challenged the preclusive effect of Judge Pappert's decision, we will address collateral estoppel briefly.

The preclusive effect of a federal order is a question of federal law. See Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 135 (3d Cir. 1999). A nonparty to the prior proceeding may employ preclusion offensively unless that "action did not provide a full and fair opportunity to litigate or other factors make it unfair or unwise to permit preclusion." 18A Wright & Miller,

Federal Practice & Procedure § 4464 (3d ed. 2020); see Parklane Hoisery Co. v. Shore, 439 U.S. 322, 332 (1979); Raytech Corp. v. White, 54 F.3d 187, 195 (3d Cir. 1995) ("A finding of fairness to the defendant is … a necessary premise to the application of offensive collateral estoppel.").

All the elements of collateral estoppel are present here. Judge Pappert: (1) gave Thomas appropriate notice that he was considering sanctions; (2) decided the sanctions question based on the evidence before him; and (3) entered final judgment. Moreover, final judgment was not based on fraud or some other invalidating factor. See Taggart, 2021 WL 2255875, at *11–19. We also note that Thomas does not dispute the facts found by Judge Pappert.

We thus rule that Judge Pappert's findings and conclusions in his Deutsche Bank Memorandum have preclusive effect in this proceeding. As we have discussed, that includes the Judge's determination that Thomas lied to the Court, repeatedly missed deadlines, and advanced meritless and frivolous motions and claims. Id.

*Violations of the Rules of Professional Conduct*

In light of Judge Pappert's findings and Thomas's conduct before us, we conclude that Thomas violated Rules of Professional Conduct 1.1 (Competence), 1.3 (Diligence), 3.1 (Meritorious Claims and Contentions), 3.2 (Expediting Litigation), 3.3(a)(1) (Candor to the Tribunal), and 8.4 (Misconduct), in connection with the Taggart suit.

Rule 1.1 requires a lawyer to "provide competent representation to a client" through "legal knowledge, skill, thoroughness and preparation reasonably necessary for representation." Pa.R.P.C. 1.1. Judge Pappert found that Thomas's conduct "reveals an unfamiliarity with one of this Court's most basic rules" and that Thomas "acted in bad faith by missing nearly every deadline in this case." Taggart, 2021 WL 2255875, at *14.

Rule 1.3 requires that: "A lawyer shall act with reasonable diligence and promptness in

representing a client." Pa.R.P.C. 1.3.  Judge Pappert found that Thomas's filings "evince a pervasive lack of diligence" which "harm[ed] his client, his opponents and the Court." Taggart, 2021 WL 2255875, at *15.

Rule 3.1 requires that: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous . . . ." Pa.R.P.C. 3.1.  Judge Pappert found that Thomas "fil[ed] a baseless motion" and "advance[ed] frivolous claims," conduct that "undoubtedly led to inflated legal bills for his opponents." Taggart, 2021 WL 2255875, at *18.

Rule 3.2 requires that: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Pa.R.P.C. 3.2.  Judge Pappert found that Thomas: "recycled [a quiet title] claim, barred by existing law, to harass, cause unnecessary delay and needlessly increase the cost of litigation." Taggart, 2021 WL 2255875, at *16.

Rule 3.3(a)(1) requires that: "A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . . ." Pa.R.P.C. 3.3(a)(1); see also In re Grasso, 586 B.R. 110, 162 (Bankr. E.D. Pa. 2018) (quoting Eagan by Keith v. Jackson, 855 F. Supp. 765, 790 (E.D. Pa. 1994) (internal quotations omitted) ("an attorney, as an officer of the Court, has an overarching duty of candor to the Court.")).  As we have discussed, because Thomas assured Judge Pappert that he had addressed and resolved the administrative suspension issue, the Judge allowed Thomas to participate in the Deutsche Bank motions hearing. Id.  The Judge then learned that Thomas had been untruthful.

Finally, we conclude that Thomas's innumerable transgressions before Judge Pappert were "prejudicial to the administration of justice," as required to establish a violation of 8.4. Pa.R.P.C.

8.4(d).

*Disposition*

Having found by clear and convincing evidence that Thomas violated Rules of Professional Conduct 1.1, 1.3, 3.1, 3.2, 3.3(a)(1), and 8.4, we must determine what discipline we believe is warranted.

The American Bar Association's Standards for Imposing Lawyer Sanctions have provided us with guidance. See, e.g. Malofiy, Dkt. 14-mc-139, Doc. No. 52; Doherty, Dkt. 19-mc-167, Doc. No. 23. The ABA counsels that, "[a]fter misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose." See ABA, Standards for Imposing Lawyer Sanctions (1986, amended 1992) § 9.1. The ABA condemns lawyers who make false statements to the court or otherwise abuse the legal process. Id. at § 4.5 ("Disbarment is generally appropriate when a lawyer's course of conduct demonstrates that the lawyer does not understand the most fundamental legal doctrines or procedures, and the lawyer's conduct causes injury or potential injury to a client."); § 6.1 ("Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement … and … causes serious or potentially serious interference with a legal proceeding.").

Crediting Thomas' hearing proffers, we find that he has not mitigated his unprofessional conduct. In acknowledging that misconduct, Thomas: (1) named some twenty-five former clients who would vouch for him; (2) described steps he has taken to improve his conduct; and (3) ascribed his misconduct to a "personal issue." (Hrg. Tr. at 10:15–20:1.) Even crediting this mitigation evidence, we remain concerned. By the hearing's conclusion, Thomas disputed that he had knowingly filed baseless claims before Judge Pappert:

> I absolutely state that I feel every one of those claims should have been heard properly . . . . [Y]es, I feel that these claims were properly brought . . . . I strongly

do think that the case law now supports several of those claims.

(Id. at 31:17–34:5.)  Thomas's inability even now to acknowledge the baselessness of claims rejected in some two dozen cases speaks to his unfitness to practice.  In March 2021, the Third Circuit found that Thomas had copied and pasted sections of his district court briefs into his appellate briefs.  Conboy v. United States Small Business Administration, 992 F.3d 153, 157–58 (3d Cir. 2021) ("the copy-and-paste jobs before us reflect a dereliction of duty, not an honest mistake.").  The Circuit held that the appeal Thomas had prosecuted was frivolous, and ordered him to pay damages to appellees.  Id. at 158; see Fed. R. App. P. 38 ("If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.").

In August 2020, Judge McHugh dismissed with prejudice a complaint Thomas had prepared: "the claims here are pleaded in vague terms against multiple defendants with little regard for the Rules and little grasp of the controlling principles of law."  Scripnicencu v. LSF9 Master Participation Trust, No. 19-5280, 2020 WL 4805349, at *1 (E.D. Pa. Aug. 18, 2020).  Judge McHugh found that the Complaint "fails to meet basic standards of professionalism required for submissions to the Court, as it is riddled with typographic and numbering errors, and portions of it are clearly copied and pasted from complaints Plaintiff's counsel has filed in other cases."  Id. at *12.  Indeed, Thomas had a reputation for a "failure to follow basic procedural rules, engaging in misconduct, bringing actions that are barred by prevailing doctrines applicable to the case, and a lack of candor when confronted about those issues."  Id. at *13.  Judge McHugh then noted that Judges Jones and Wolson had also reprimanded or sanctioned Thomas.  Id.; see Meyers v. Caliber Home Loans, No. 19-cv-596, 2019 WL 4393377, at *10 n.26 (M.D. Pa. Sept. 13, 2019); Jacovetti

Law, P.C. v. Shelton, No. 20-cv-163, 2020 WL 1491320, at *1 (E.D. Pa. Mar. 27, 2020).

Thomas has also committed misconduct in the District of New Jersey. After noting that Thomas had repeatedly filed meritless claims (very similar to those dismissed by Judge Pappert), Judge Kugler ordered Thomas to show cause why he should not be enjoined from further filings. Hood v. Victoria Crossing Townhouse Ass'n, No. 18-12259, at *3, 3 n.5 (D.N.J. July 25, 2019). In 2021, Judge Hillman found that Thomas had missed deadlines, had not responded to multiple motions, and had filed a brief virtually identical to a brief he had previously filed in the same case. Keyes v. Nationstar Mortgage LLC, No. 20-cv-2649, 2021 WL 2651946, at *9 (D.N.J. June 28, 2021). Judge Hillman also compiled a list of twelve cases (including Hood, Jacovetti Law, P.C., Conboy, Taggart, and Scripnicencu) in which Thomas was either reprimanded or sanctioned. Id. at 10-12.

Attorney discipline is intended "to protect the public from unfit attorneys and to maintain the integrity of the legal profession and the judicial process." Office of Disciplinary Counsel v. Price, 732 A.2d 599, 606 (Pa. 1999). Thomas' behavior before Judge Pappert alone warrants his disbarment. His strikingly similar misconduct before many other Judges confirms that Thomas' resumption of practice before us—even after a period of suspension—will harm the public and undermine the integrity of the legal profession. ABA, Standards for Imposing Lawyer Sanctions § 9.22.

## VI.   CONCLUSION

For these reasons, we find that Mr. Putnam has established by clear and convincing evidence that Thomas violated Pennsylvania Rules of Professional Conduct 1.1, 1.3, 3.1, 3.2, 3.3(a)(1), and 8.4. Upon consideration of the entire record, we believe the appropriate sanction for Thomas's misconduct is disbarment from the bar of the United States District Court for the

Eastern District of Pennsylvania.

**RECOMMENDATION**

We recommend that Joshua Louis Thomas be disbarred from the bar of the United States District Court for the Eastern District of Pennsylvania.

                                                                               Paul S. Diamond, J.

                                                                               Edward G. Smith, J.